NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-417

STATE IN THE INTEREST OF C.R.D., D.L.D.,
S.L.D.-W., AND
S.R.D.-W.

VERSUS

M.L.D. AND D.W.

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. J-4414
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese,
Judges.

AFFIRMED.

Genovese, J., concurs in the result.

Donald Wilson
Wilson & Wilson
P. O. Box 1346
Jena, LA 71342
(318) 992-2104
COUNSEL FOR APPELLEES:
    C.R.D.
    D.L.D.
    S.L.D.-W.
    S.R.D.-W.

**Guy Richard Lain**
**Attorney at Law**
**1648 Carter Street**
**Vidalia, LA 71373**
**(318) 336-8611**
**COUNSEL FOR APPELLEE:**
    **Louisiana Dept. of Children and Family Services**

**David Michael Williams**
**LaSalle Parish Public Defender's Office**
**P.O. Box 13**
**Jena, LA 71342**
**(318) 992-0881**
**COUNSEL FOR APPELLANT:**
    **M.L.D.**

**Krystal L. Todd**
**LaSalle Parish Public Defender's Office**
**P.O. Box 13**
**Jena, LA 71342**
**(318) 992-0881**
**COUNSEL FOR APPELLANT:**
    **D.W.**

**SAUNDERS, J.**

In this action, M.L.D. [1] and D.W. appeal the trial court's judgment terminating their parental rights vis-à-vis their minor children.

**FACTS AND PROCEDURAL HISTORY:**

The State of Louisiana Department of Children and Family Services (DCFS) received a report on August 13, 2008, which revealed M.L.D and D.W. were attempting to transfer custody of their children to non-family individuals. On August 28, 2008, four minor children, C.R.D., D.L.D., S.L.D.-W., and S.R.D.-W., were removed from the custody and control of their parents, M.L.D. and D.W., pursuant to an Instanter Order. A petition for Adjudication was filed on September 26, 2008. The Petition contained several allegations that warranted the removal of the children, such as poor parenting skills, no demonstrable love or affection for the children, starvation of two of the children, testimony that the children were offered to another couple for adoption with the condition the parents keep the Social Security Income checks, inadequate clothing provided to the children, mental health issues of the mother, criminal history and involvement with drugs by the father, filthy living conditions, and no running water, among other allegations. The minor children were adjudicated Children in Need of Care by the juvenile court on December 4, 2008, and a Judgment of Adjudication was signed on January 8, 2009.

Services had previously been provided to M.L.D. and D.W. in a Family Services case from July 17, 2007, to January 16, 2008. Several areas of parenting deficiencies were again identified and defined. Service plans of rehabilitation were developed and court-approved as necessary to accomplish the safe reunification of

_____

[1] Per Uniform Rules—Courts of Appeal, Rules 5–1, 5–2 , "[t]o ensure the confidentiality of a minor who is a party to or whose interests are the subject matter in involuntary termination of parental rights, initials shall be used in all filings and in opinions rendered by the court of appeal to protect the minor's identity."

the children with their parents. The plans included the delivery of numerous services by multiple agencies. Despite the provision of services by numerous professionals, the parents' conditions allegedly continued to deteriorate.

On November 4, 2010, a Petition to Terminate Parental Rights was filed by DCFS. DCFS alleged that M.L.D. and D.W. either did not adequately participate in the services required by the case plans or were not able to demonstrate substantial improvement in redressing the problems preventing reunification after receipt of the services provided. DCFS also alleged there was no reasonable expectation of significant improvement in the parents' condition or conduct in the near future.

A hearing commenced on April 14, 2011, and was continued until February 22, 2012, when it convened again. After hearing the evidence presented, the trial court rendered judgment in favor of the plaintiff, DCFS, terminating the parental rights of M.L.D. and D.W. The court found that DCFS provided the services that were necessary to assist the parents in working toward reunification with their minor children. It also found DCFS proved by clear and convincing evidence that M.L.D. and D.W. failed to substantially comply with their case plan for services, failed to avail themselves of the services provided to them by DCFS that were necessary to assist them in working toward reunification with their minor children, failed to show any stability or permanency, and that there was no reasonable expectation of significant improvement in their condition or conduct in the near future. The court also considered the children's ages and need for a safe, stable and permanent home, as well as all evidence as to the best interest of the children. The children were declared and certified to be free and available for adoption by others.

A written Motion for Appeal and Designation of Record was filed on February 27, 2012 and the order was signed on February 29, 2012, granting the appeal. On March 27, 2012, the judgment was executed. M.L.D. and D.W. appeal.

## ASSIGNMENT OF ERROR:

On appeal, M.L.D. and D.W. set forth the following assignment of error:

The [t]rial court erred in finding that the State has provided the services that were necessary to assist the parents in working toward reunification including[,] but not limited to[,] assisting the parents in obtaining stable and permanent housing or employment and that there is no reasonable expectation of significant improvement in the parents' condition or conduct.

## LAW AND ANALYSIS:

Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Termination of parental rights is a two prong inquiry: (1) the State, by clear and convincing evidence, must establish at least one statutory ground for termination, La.Ch.Code art. 1015; and, (2) only after a finding that at least one of the statutory grounds is satisfied, the trial court must determine whether the termination is in the best interest of the child. La.Ch.Code arts. 1035(A), 1037(B). The determination of whether the involuntary termination of parental rights should occur requires the trial court to balance the parents' "natural, fundamental liberty interest in the continuing companionship, care, custody, and management of their children" with the often competing interest of the children to establish "secure, stable, long-term, and continuous relationships found in a home with proper parental care." *State in the Interest of H.A.B.*, 10-1111, p.28 (La. 10/19/10), 49 So.3d 345, 367.

The primary concern of the courts and the State is to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. *State ex. rel. S.M.W.*, 00-3277 (La. 2/21/01), 781 So.2d 1223. There are multiple statutory

3

grounds for the involuntary termination of parental rights, and only one of these grounds need be established. *State ex rel. D.L.R.*, 08-1541 (La. 12/12/08), 998 So.2d 681.

The trial court held termination of parental rights was proper under La.Ch.Code art. 1015(5) since there was 1) no substantial parental compliance with a case plan for services which had been previously filed by DCFS and approved by the court as necessary for the safe return of the children; and 2) despite earlier intervention, there was no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the children's ages and their need for a safe, stable, and permanent home.

## 1. *Substantial Compliance with a Case Plan*

On appeal, M.L.D. and D.W. assert they were not provided with adequate services to assist in their rehabilitation. They allege they were not provided services to obtain stable and permanent housing and employment.

The manifest error standard of review applies to a trial court's findings regarding whether parental rights should be involuntarily terminated. *State in the Interest of K.G. and T.G.,* 02-2886, 02-2886 (La.3/18/03), 841 So.2d 759. In applying this standard, any factual findings of the trial court may not be set aside unless the findings are manifestly erroneous or, in other words, are clearly wrong. *Rosell v. ESCO,* 549 So.2d 840 (La.1989). The trial court is in a unique position to see and hear the witnesses as they testify and is not disadvantaged by the review of a cold record. *State of La. in the Interest of A.T., T.A., & J.A.*, 06-501 (La. 7/6/06). 936 So.2d 79. If the trial court's findings are reasonable, the reviewing court may not reverse even if convinced it would have weighed the evidence differently.

It is DCFS' responsibility to provide treatment and counseling to address issues that would prompt reunification. The termination of parental rights is

4

authorized only after efforts have been attempted by the state to reunite the family by providing rehabilitative services, as needed, to the parent. Rehabilitative services in this case were provided. The primary goals of DCFS, as shown in the record, were obtaining and maintaining stable housing and stable employment. For over three and one-half years, the parents were provided with services and assistance.

DCFS offered and provided parenting classes through Volunteers of America to M.L.D. and D.W. twice. They received classes through the LSU-Ag Center in Jena. They received counseling through the Family Counseling Agency. M.L.D. required services and extra counseling for her mental disorders (factitious disorder by proxy and histrionic personality disorder). Her factitious disorder by proxy manifested itself through falsifying symptoms and illnesses in her children and continuously lying to physicians or other caregivers. Factitious disorder has a high potential for abuse as M.L.D. sought attention for herself by harming her children. M.L.D. chose a psychologist and began treatment for these disorders.

D.W. went through various rehabilitative programs and detoxification facilities to address his substance abuse problems. He suffers from drug dependence and relational problems with his spouse and children. The couple was also required to read self-help books, parenting books, and books on factitious disorder. Additionally, the parents received intensive parenting skills training through Intensive Home Based Services.

In each of these instances, services necessary to prompt reunification were provided to the parents. However, they did not comply with these required plans. According to La.Ch.Code art. 1036(C), the lack of parental compliance with a case plan can be proven by showing one or more of the following:

(1)   The parent's failure to attend court-approved scheduled visitations with the child.

(2)   The parent's failure to communicate with the child.

(3)   The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4)   The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5)   The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6)   The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7)   The persistence of conditions that led to removal or similar potentially harmful conditions.

Substantial compliance with a case plan is not merely completing programs offered; it includes "substantial improvement in redressing the problems preventing reunification." La.Ch.Code art. 1036(C)(6). There also must be no persistence of the conditions that led to the removal or similarly potentially harmful conditions. La.Ch.Code art. 1036(C)(7).

There are multiple instances of M.L.D's and D.W.'s failure to comply with these conditions, which were part of the case plan for reunification of the family. Specifically, the case plan required the parents to follow any recommendations as a result of the evaluations; participate in psychological evaluations and follow resulting recommendations, which were included in the case plan (seek mental health and medical follow-up examinations, complete parenting classes, and maintain a stable income and home environment); exhibit ability to maintain adequate housing and food in the home; demonstrate the ability to maintain a stable income sufficient to care for the children; and visit regularly with the children according to the agreed-upon schedule. The record reflects the unrefuted

6

evidence of both parents' failure to complete these requirements and show improvement in redressing these problems. To the contrary, the evidence shows a continuation of these conditions. The record further establishes that D.W. was incarcerated during the period the children were in DCFS's custody for drug-related charges. D.W. and M.L.D. never maintained a stable address for a minimum of six months. They lived at different locations for various periods during the time the case plan seeking reunification of the family was in effect. D.W. did not obtain any stable employment during the children's tenure in DCFS custody. M.L.D. continued to work at random jobs.

Accordingly, we find that M.L.D. and D.W. were continuously provided with rehabilitative services to help them achieve the goals of their case plan over three and a half years. There has not been a showing of manifest error as to the sufficiency of the services provided. The record supports a finding that proper rehabilitative services were provided. Although they went through the motions of completing many of these courses, M.L.D and D.W. did not substantially comply with the case plan set forth. DCFS established that involuntary termination of the defendants' parental rights was warranted pursuant to La.Ch.Code art. 1015(5) due to these services being rendered. Therefore, find that they were provided with satisfactory rehabilitative services to help them achieve the goals of the case plan. We further find the failures to comply with the statutorily-defined measures of compliance constitute a lack of substantial parental compliance with the case plan. Accordingly, the trial court's determination of lack of substantial compliance with the case plan is affirmed.

2. *No Reasonable Expectation of Significant Improvement*

M.L.D. and D.W. assert the trial court erred in determining there is no reasonable expectation of significant improvement in their condition or conduct.

7

They assert DCFS failed to prove a lack of reasonable expectation of rehabilitation in the near future. We disagree.

The standard by which lack of reasonable expectation of significant improvement in a parent's conduct in the near future is to be judged is set out in La.Ch.Code art. 1036(D). It explains that this component of La.Ch.Code art. 1015(5) may be established by proof of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

The State must prove by clear and convincing evidence that there is no reasonable expectation of significant improvement in the parents' condition or conduct. The trial court found clear and convincing evidence of a lack of reasonable expectation of significant improvement. To overturn this finding would require a showing of manifest error.

M.L.D. and D.W.'s initial case worker, Ms. Kimberly Bradshaw, testified the parents had continuously problematic visits with their children. The parents showed blatant favoritism for some children versus others, and M.L.D. even considered one child her friend. Ms. Bradshaw testified the parents could not control their children and M.L.D. acted like a child herself when with the children. M.L.D. did not go to mental health services providers she was referred to when the case was opened. She gave contradictory information to service providers when

she did go.  Often this would result in a provider denying services based on the information provided by M.L.D.

Ms. Betty Gilmore, their later case worker, testified that M.L.D. and D.W. could not control their children during visits, did not plan appropriate activities for scheduled home visits, would continuously regress in skills, and showed no noticeable change after counseling or training.  M.L.D. did not attend therapy sessions offered with three of her children and constantly made excuses for her lack of attendance.  She later admitted she did not attend because the therapist upset her.  Ms. Gilmore also testified that despite multiple resources made available to them, M.L.D. and D.W. were unable to obtain stable housing or employment.  M.L.D. and D.W. moved their residences several times during the course of their involvement with DCFS and never held steady employment.  This lack of stability in housing and employment was also echoed in the compliance sections of the case plans in Dr. John Simoneaux's psychological evaluation reports.

Dr. Simoneaux testified both parents continuously exercised poor judgment throughout the years he worked with them. Their Global Assessment of Functioning Scores showed chronic low levels and poor progress.  Both parents struggle with mental health issues.  Their relationship was in flux due to marital problems, and they sometimes separated or lived apart.  He reported D.W. has been dealing with substance abuse and addiction since 1998 or 1999 and attempted suicide during a period of separation from M.L.D. in May 2010.  There were times when D.W. would not get out of bed due to substance abuse involving mixtures of drugs.  D.W. was arrested for violating his probation by using illegal drugs.  There is also the possibility of incarceration due to $35,000 in child support arrearages D.W. owes to his children from another relationship.  While C.R.D, D.L.D, S.L.D.-

W., and S.R.D.-W. were in custody, D.W. and M.L.D. had a fifth child and transferred custody of the child to non-relatives. M.L.D. was arrested for either stalking or disturbing the peace in connection with disputes involving the custody of that child. They constantly made decisions that were not well thought out. They stated they lived with a homeless person for a period because they could not get housing under their names due to outstanding bills. Neither parent "understood the long-term consequences of actions." He testified their continuous self-defeating and self-destructing behavior resulted in no improvement in stability or judgment. They would promise to change, but never truly attempted to change. Dr. Simoneaux testified that it was his professional opinion that they were unlikely to change this poor decision-making or impulsivity.

No one involved in this case argues or suggests that both parents do not each suffer from psychological conditions which negatively impact the ability of either to care for their children. The exact nature and severity of those conditions is well-documented in the record and in the testimony of Dr. Simoneaux. No one has suggested that either parent is capable of caring for their children, either at the time the children were taken into foster care, or as of the date the petition for termination was filed. Dr. Simoneaux was unequivocal and absolutely certain--he stated there was no reasonable expectation of significant improvement in either parent's condition or conduct in the near future and, considering the children's ages and need for safe, stable, and permanent homes, termination was in the best interest of the children. Neither parent has made any progress in over three and one-half years of counseling by Dr. Simoneaux and other mental health professionals or through other treatment and services provided.

Despite all efforts by DCFS to provide M.L.D. and D.W. with rehabilitative support, they did not improve. Moreover, both parties continue to be unreliable

10

sources of stability for their children. The record evidences D.W.'s struggles with substance abuse and both parents' struggles with mental health issues. The record clearly establishes their repeated and ongoing pattern of failing to provide an adequate permanent home for the children. This pattern is evidenced by their failure to maintain adequate housing or employment to sustain the family. The parents' pattern of conduct revealed either an inability or unwillingness to establish a stable home environment and income suitable for the care of their four children. Accordingly, we find that the grounds for termination of parental rights pursuant to La.Ch.Code art. 1015(5) were established by clear and convincing evidence set forth in the record.

The record supports a finding, by clear and convincing evidence, of a lack of a reasonable expectation of significant improvement in the appellants' conduct and conditions in the near future. We agree with the trial court that the state carried its burden of proving that M.L.D. and D.W. failed to make substantial progress and that they are unlikely to improve in the near future. The parents completed all parenting and nurturing classes and programs recommended by DCFS. Despite completion of these programs, the parents did not make any rehabilitative progress. Expert and other evidence established no reasonable expectation of significant improvement in the parents' condition in the near future. Furthermore, it is in the best interest of the children that parental rights be terminated. For these reasons, we find no manifest error in the trial court's determination that DCFS adequately demonstrated that there was no reasonable expectation of significant improvement of the parent's conduct in the near future.

## CONCLUSION:

Judged by the manifest error standard, the findings and ruling of the trial court are correct and factually consistent, having clear and convincing support in

11

the record. The termination of parental rights is proper under La.Ch.Code art. 1015(5), since there was 1) no substantial parental compliance with a case plan and 2) there is no reasonable expectation of significant improvement in the parents' condition or conduct in the near future.

Costs of this appeal are assessed to M.L.D. and D.W.

**AFFIRMED.**